## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**ERNIE HAIRE FORD, INC.,**

                   **Plaintiff,**

**-vs-**                                **Case No. 6:07-cv-288-Orl-28DAB**

**UNIVERSAL UNDERWRITERS
INSURANCE COMPANY,**

                   **Defendant.**
_____/
                              **Consolidated with**

**CROWN AUTO DEALERSHIPS, INC.,**

                   **Plaintiff,**

**-vs-**                                **Case No. 6:07-cv-595-Orl-28DAB**

**UNIVERSAL UNDERWRITERS
INSURANCE COMPANY,**

                   **Defendant.**
_____/

## ORDER

     Plaintiffs Ernie Haire Ford, Inc. ("Ernie Haire") and Crown Auto Dealerships, Inc.

("Crown") bring the instant actions against their liability insurer, Defendant Universal

Underwriters Insurance Company ("Universal"), seeking declaratory relief.  Plaintiffs, who

operate car dealerships, disagree with Universal regarding the amount of liability coverage

available in connection with lawsuits that have been filed against them in other courts.

     Each Plaintiff has filed a declaratory judgment action regarding the amount of

coverage; they initially filed their suits in state court, but the cases were removed to this Court and have been consolidated.  Currently pending are cross-motions for summary judgment (Docs. 29 & 45) and the responses thereto (Docs. 33 & 48).  The Court heard oral argument on the motions (see Mins., Doc. 51) and now issues the following rulings thereon.

## I.  Background

The Plaintiffs have been sued in separate class-action lawsuits[1] for alleged violations of, inter alia, the Truth-in-Lending Act, 15 U.S.C. § 1601 et seq., arising from Plaintiffs' practices in connection with sales of hundreds of automobiles over periods of several years. The class period for the Ernie Haire class action runs from August 30, 1998 to August 1, 2003,[2] and the class period for the Crown class action runs from January 5, 2000 to July 5, 2003.

Each Plaintiff obtained insurance policies from Universal for several consecutive policy periods.  The language of the policies issued to the two Plaintiffs – known as

---

[1]The suit against Ernie Haire was filed in the Circuit Court in and for Hillsborough County, and the suit against Crown is pending in the United States District Court, Middle District of Florida, Tampa Division.  (See Second Am. Class Action Compl. in *Gilley v. Ernie Haire Ford, Inc.*, App. in Supp. of Pls.' Mot. for Summ. J., Attach. to Doc. 29 [hereinafter "Pls.' App."], at Bates Stamp UUIC-00223 to -00238; Fourth Am. Class Action Compl. in *Veal v. Crown Auto Dealerships, Inc.*, Pls.' App. at Bates Stamp UUIC-00507 to -00530).

[2]In their memorandum in opposition to Universal's cross-motion for summary judgment, Plaintiffs state that since the filing of Plaintiffs' motion for summary judgment, "the Ernie Haire Ford Class Period is in the process of being shortened."  (Doc. 48 at 2 n.1). Plaintiffs provide a new ending date of December 31, 2002 for the Ernie Haire class period, instead of the original ending date of August 1, 2003.  (See id.)  For the purpose of discussion in this Order, the Court has used the original class period dates; in any event, the change in the end date does not appear to affect the rulings herein.

"Unicover policies" – is identical for the purposes of this case.  Ernie Haire obtained five successive policies for five annual periods beginning April 1, 1998 and ending April 1, 2003. Crown also obtained five successive policies – the first two with policy periods of August 1, 1999 to August 1, 2000 and August 1, 2000 to April 1, 2001, respectively, and the others running for three consecutive annual periods from April 1, 2001 to April 1, 2004.

As Universal explains in its summary judgment motion, "[i]t is undisputed that the alleged pattern and practice of violations of truth-in-lending ("TILA") statutes in the Class Actions implicated the STEO ["Statute and Title E&O"] coverage afforded under Coverage Part 500 of the [Unicover policies], subject to all other applicable terms, conditions and exclusions."  (Def.'s Mem. in Supp. of Cross-Mot. for Summ. J., Doc. 45, at 3-4).  However, the parties dispute the limit of coverage for the TILA violations in the class actions; in Count I of their Complaints – the count at issue in the summary judgment motions now before the Court[3] – Plaintiffs seek a declaration as to the amount of coverage available under Part 500 of the Unicover policies.  Plaintiffs contend that they are entitled to $500,000 in "annual aggregate" limits for each policy period within their respective class periods, for a potential total of $2.5 million in available coverage, but Universal asserts that each Plaintiff is constrained to one "per suit" limit under one policy – a total of $500,000 for each class action.[4]

---

[3]Count II of the Plaintiffs' Complaints, which sought a declaration regarding coverage under Part 550 of the policies, has been dismissed pursuant to a stipulation by the parties. (See Docs. 41 & 42).  A third count, alleging breach by Universal of its duty to defend, remains pending.  (See Crown's Second Am. Compl., Doc. 39, at 4-5).

[4]As will become apparent later in the Order, the early Unicover policies provided both

## II.  Discussion

### A.  Summary Judgment Standards

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of showing that no genuine issues of material fact remain.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "Summary judgment is appropriate 'in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law.'"  TIG Ins. Co. v. Smart Sch., 401 F. Supp. 2d 1334, 1337 (S.D. Fla. 2005) (quoting Northland Cas. Co. v. HBE Corp., 160 F. Supp. 2d 1348, 1358 (M.D. Fla. 2001)).

"Cross motions for summary judgment do not change the standard."  Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007).  "'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.'"  Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting Buell Cabinet Co. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979)).  "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts."  Id.; accord Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins.

---

a $500,000 "per suit" limit and a $500,000 "annual aggregate" limit.  That is why the limits urged by the parties are numerically the same; however, they are different limits.

Co., 176 F.3d 794, 797 (4th Cir. 1999) ("When considering motions from both parties for summary judgment, the court applies the same standard of review and so may not resolve genuine issues of material fact.  Instead, [the court must] consider and rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard.") (citations omitted).

B.  Principles of Insurance Contract Interpretation

As noted by the parties, "[t]he interpretation of an insurance contract is a question of law." Kattoum v. N.H. Indem. Co., 968 So. 2d 602, 604 (Fla. 2d DCA 2007).  It is undisputed that Florida law governs the interpretation of the insurance policies at issue here.   "Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000).  "The scope and extent of insurance coverage is determined by the language and terms of the policy." Bethel v. Sec. Nat'l Ins. Co., 949 So. 2d 219, 222 (Fla. 3d DCA 2006).

"If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous." Auto-Owners, 756 So. 2d at 34.  "Ambiguous policy provisions are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy.  Likewise, ambiguous insurance policy exclusions are construed against the drafter and in favor of the insured.  In fact, exclusionary clauses are construed even more strictly against the insurer than coverage clauses." Id. (citations omitted).  "[I]n construing

insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." Id.; see also § 627.419(1), Fla. Stat. ("Every insurance contract shall be construed according to the entirety of its terms and conditions . . . ."). "[A]ny apparent inconsistency should be reconciled if possible." Fla. Farm Bureau Ins. Co. v. Birge, 659 So. 2d 310, 312 (Fla. 2d DCA 1994).

### C.  The Merits of the Summary Judgment Motions

### 1.  Overview of the Parties' Positions

In its summary judgment motion, Universal asserts that each Plaintiff has STEO coverage only up to the "highest limit" of liability available under any one of the policies in effect during the class period. Universal argues that based on the policies' "Non-Stacking of Limits" provision and definition of "suit," each Plaintiff is confined to one $500,000 "per suit" limit.

Plaintiffs, on the other hand, contend in their summary judgment motion that they are entitled to an annual aggregate limit of $500,000 for each of the policy periods within the class periods of their respective class action lawsuits. Plaintiffs argue that Universal collected premiums for five consecutive policy periods for "occurrence" policies and that the underlying "claims" in the class actions "occurred and triggered coverage in separate and distinct policy periods." (Doc. 29 at 4).  Plaintiffs further assert that the "Non-Stacking of Limits" provision – upon which Universal relies in attempting to confine the Plaintiffs to the limits of only one of the policies – has no application here because Plaintiffs are not attempting to "stack" limits, coverages, or policies.  Plaintiffs have included the following graphical representation

of their position with respect to each of their class periods, policy periods, and annual aggregate limits:

Ernie Haire:



Crown:



(See Doc. 29 at 3).

Neither party has presented any case law that is squarely on point with regard to the issue of coverage under the circumstances of this case, nor has the Court's own research located a case precisely on point.  In any event, analysis of the parties' arguments must begin with an overview of the relevant provisions of the Unicover policies.

### 2.  The Unicover Policy

The Unicover Policy is a "a multiple coverage insurance policy."  (Pls.' App. at Bates Stamp UUIC-00018.  Its preamble explains that "each Coverage Part is made up of its provisions, plus those of the . . . General Conditions[] and that portion of the declarations

referring to the Coverage Part, including all endorsements made applicable to that Coverage Part. "  (Id.)

     The STEO portion of Coverage Part 500 of the Unicover Policy – the portion that provides coverage for the underlying TILA violations – reads as follows, where "WE" and "OUR" refer to Universal:   "WE will pay all sums the INSURED legally must pay as DAMAGES . . .  because of STATUTE AND TITLE E&O . . . ."  (Id. at Bates Stamp UUIC-00053).  The "Definitions" section of Part 500 includes the following provisions:

> "DAMAGES" means amounts awardable by a court of law.
>
> "STATUTE AND TITLE E&O" means any claim or SUIT filed against YOU . . . by or on behalf of . . . a customer . . . because of an alleged violation during the Coverage Part period, of any federal, state or local . . . truth-in-lending or truth-in-leasing law . . . .
>
> "SUIT" means a civil action for DAMAGES . . . .   A class action is one SUIT. . . .

(Id. at Bates Stamp UUIC-00054 to -00056).  "Claim" is not defined in the policy.

     Substituting terms, then, the STEO provisions obligate Universal to pay its insured "sums that the insured legally must pay as damages because of . . . any claim or suit filed against" the insured by "a customer . . . because of an alleged violation during the Coverage Part period" of a truth-in-lending law by the insured.  The "General Conditions" section of the policies includes the following provision:

> NON-STACKING OF LIMITS – If more than one Coverage Part or policy issued by US to YOU should insure a LOSS, INJURY, OCCURRENCE, claim or SUIT, the most WE will pay is the highest limit applicable.  The limit under that Coverage Part or policy will be inclusive of the lower limit in the other Coverage Part(s) or policy(s), not in addition to them.

(Id. at Bates Stamp UUIC-00020).

For policy periods prior to April 1, 2002, each policy provided that the most Universal would pay for STEO, "[r]egardless of the number of . . . premiums charged by th[e] Coverage Part, . . . claims made or suits brought," was "the annual aggregate limit shown in the declarations." (Id. at Bates Stamp UUIC-00059 to -00060). The declarations pages for those policy periods list "per suit" limits of $500,000 and "annual aggregate" limits of $500,000. (See id. at Bates Stamp UUIC-00135, -00148, -00152, -00164, 00169, -00181, -00186, -00199, -00240, -00265, -00270, -00296, -00303, -00326, -00331, -00351; -00358, -00380, -00385, -00407). Via an endorsement added for policy periods beginning April 1, 2002, the later policies added a sentence to the above-quoted "most we will pay provision" reading: "the most [Universal] will pay in damages and defense costs for any one claim or suit is the limit per suit stated in the declarations." (Endorsement No. 338, id. at Bates Stamp UUIC-00132).[5] The declarations pages for these later policy periods list the "per suit"

---

[5]Prior to the issuance of the new policies in April 2002 – the policies that changed the "per suit" limits from $500,000 to $25,000 – Universal sent a letter to each Plaintiff stating in part:

> Your Unicover Policy provides broad coverage that is specifically designed for you. With this renewal, we are modifying coverage that was provided in the last policy term. Dealers are being targeted by the media, and consequently attorneys, because of dealership practices that are allegedly in violation of laws described in our Statute and Title Errors and Omission coverage (STE&O). We need your help in trying to control claims of this kind. We will continue to offer STE&O coverage, but on a more limited basis.
> . . . .
> Endorsement No. 338 – Statute and Title E & O – Limit Per Suit
> In the past, the amount of coverage that we provided for damages in each Statute and Title E & O (STE&O) suit was equivalent to the full STE&O

limits as $25,000 and the "annual aggregate" limits as $500,000.  (Id. at Bates Stamp UUIC-00204, -00218, -00415, -00437, -00444, -00467, -00475, -00498).

        3.  Universal's Motion (Doc. 45)

        Universal's position on Count I is based on two provisions of the Policy:  the "Non-Stacking of Limits" provision in the General Conditions and the portion of the definition of "suit" that states that "[a] class action is one suit."  Universal contends that together, these two provisions limit each Plaintiff to one $500,000 limit for its entire class action and entitle Universal to summary judgment on Count I.  However, this argument is not well-taken.

        In its memorandum, Universal summarizes its position as follows:

                The Non-Stacking of Limits provision addresses situations in which claims are asserted that may be potentially covered under different Coverage Parts of the same policy ("more than one Coverage Part") and claims that could be potentially covered under different policies ("more than one policy").
                It is undisputed that [Universal] never issued more than one policy at a time to either Crown or [Ernie Haire].  All of the policies were consecutive.
                It is undisputed that the Class Actions did not allege claims potentially covered under ["]more than one Coverage Part" in the same policy (concurrent coverage).
                It is undisputed that the Class Actions alleged claims that were potentially covered under the STEO coverage in "more than one policy" (consecutive coverage) as the acts alleged occurred over several years.
                As demanded by the Non-Stacking of Limits provision, [Universal] was required to determine which of the Policies in

        _____

        aggregate limit.  Coverage for defense costs was unlimited.  Endorsement 338 explains how the limit per suit will be applied when the limit per suit is lower than the STE&O aggregate limit.

(Letters from Universal to Ernie Haire and Crown, Feb. 4, 2002, Ex. G to Doc. 33) (emphasis removed).

effect during the Class Periods provided the "highest limit available."  The [Ernie Haire] Policy and the Crown Policy in effect when the Class Actions were filed had STEO "per suit" limits of liability of only $25,000 and did not include defense costs.  Under the Policies issued prior to April 1, 2002, the STEO limit of liability was $500,000 either per suit or in the aggregate and included unlimited defense costs.  Accordingly, as dictated by the terms of the Policy, [Universal] provided Plaintiffs with the highest limits available and provided a defense under one of the respective pre-April 1, 2002 policies that had a $500,000 limit of liability, exclusive of defense costs.

. . . .

. . . . Under the unambiguous terms of the Policy, the $500,000 limit of STEO coverage under any of the Policies is the limit of liability for "one suit," no matter how many plaintiffs or claims are adjudicated in that "one suit."

(Doc. 45 at 5-7) (record citations, policy numbers, paragraph numbers and footnotes omitted, and emphasis removed).

The parties debate whether Plaintiffs are attempting to "stack" coverage here. Plaintiffs contend that "stacking" only occurs when concurrent, rather than consecutive, policies are involved, and thus they argue that the "Non-Stacking of Limits" provision does not come into play.  Universal, on the other hand, avers that "stacking" occurs even if consecutive policies are involved and that to allow multiple policy limits to be applied here would be in contravention of the "Non-Stacking" provision.  However, it is not necessary for the Court to determine whether "stacking" under any of the definitions put forth by the parties is involved here; what matters is what this particular provision of the Unicover policy states and whether it is implicated under the circumstances involved.  See, e.g., Bethel, 949 So. 2d at 222.

Under its plain language, the "Non-Stacking of Limits" provision is not applicable

under the circumstances of this case.  The crux of this provision reads, "If more than one Coverage part or policy issued by US to YOU should insure a . . . claim or SUIT, the most WE will pay is the highest limit applicable."  Because of the way the STEO coverage is defined in the Unicover policies, however, there is not "more than one Coverage part or policy issued by" Universal that insures either of the class action suits at issue here.  The provision is not implicated because there is not more than one policy that "covers" "the suit."

By its terms, each Unicover policy provides coverage for TILA violations occurring during the coverage part period[6] – not "suits filed" during the coverage part period.  In the STEO coverage, Universal agrees to pay sums an insured must pay as damages because of a suit filed against an insured, but the trigger of coverage is not the filing of the suit but the commission by the insured of "an alleged violation [of a truth-in-lending law] during the Coverage Part period."  Thus, a policy does **not** provide coverage for damages from a suit based on the policy being **in effect when the suit is filed**[7] against the insured; instead, a policy covers damages from a suit if the policy is **in effect when the underlying violation upon which the suit is based occurs**.  Thus, each successive policy insures **a part** of each class action suit – that is, each policy covers the TILA violations committed by the insureds

---

[6]In this Order, the Court uses the terms "coverage part period" and "policy period" interchangeably.

[7]Thus, although Universal refers to the policies "in effect when the [c]lass [a]ctions were filed" when discussing the coverage limits (see Doc. 45 at 5), the terms of policies, if any, in effect at the time of the filing of the class actions are not relevant.  It does not matter what policy was in effect when the class actions were filed or even *whether* there was a policy in effect when the class actions were filed.  The policy that covers the TILA violations is the policy in effect when the TILA violations were committed, not the policy in effect when a suit to recover damages for those TILA violations is filed.

during a particular policy period – but none of them can be said to insure "the suit."

The coverage trigger is critical to the resolution of the issue before the Court, though Universal gives it no significance at all.  Notably, nowhere in its papers does Universal quote or paraphrase the policy's definition of STEO itself – the provision defining the triggering event for the STEO coverage as the violation by the insured during the policy period.[8] Instead, Universal jumps straight to the "Non-Stacking of Limits" provision and the definitional sentence, "A class action is one suit."  Universal correctly notes that "in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect," and that "the [policy] provisions are not to be interpreted in isolation, but in harmony with the rest of the contract."  (Doc. 45 at 10) (citation and internal quotation omitted).  However, Universal disregards these very principles by focusing solely on the definition of "suit" and the "Non-Stacking of Limits" provision without regard to the other provisions of the policy, which must be given meaning and effect.

Applying the terms of the policies, each policy covers only the part of the class action that involves TILA violations occurring during its policy period.  For example, the Ernie Haire policy for the policy period April 1, 2002, to April 1, 2003, covers acts committed by Ernie Haire during that time period, but it does not cover acts committed before or after that time

---

[8]Universal clearly realizes and does not contest that this is the trigger of coverage, however.  (See Doc. 45 at 5 (stating that "the Class Actions alleged claims that were potentially covered under the STEO coverage in 'more than one policy' . . . as the acts alleged occurred over several years")).

period.  Therefore, there is no single policy that "insures the suit,"[9] nor "more than one" policy

that "insures the suit."

It is undisputed here that the violations alleged in the underlying class actions

occurred in more than one policy period.  Thus, it requires more than one policy to cover all

_____

[9]In its motion, Universal mentions – though only in a footnote – a "prior acts extension" that was included in its policies until April 1, 2002.  (See Doc. 45 at 6 n.7).  This "prior acts extension" was removed effective April 1, 2002 when Endorsement No. 339 was added to the Plaintiffs' Policies.  This provision states:

> PRIOR ACTS EXTENSION – Coverage is extended to apply to
> SUITS or claims for STATUTE AND TITLE E&O filed during the
> Coverage Part period which arise from acts which took place
> prior to that period.  The insurance provided by this extension is
> part of and not in addition to the limit shown in the declarations.

(Pls.' App. at Bates Stamp UUIC-00062).  Under this provision, conceivably a single policy could be construed to cover TILA violations occurring in more than one period.  However, this provision does not assist Universal in this case.  First of all, this provision – unlike the STEO coverage provision – refers to suits "filed during the policy period."  The class action suits were not "filed during" the period of any policy that contained this "PRIOR ACTS EXTENSION" provision; the Crown Class Action was filed on September 3, 2003, and the Ernie Haire Class Action was filed on August 31, 2002 (see Doc. 33 at 3 nn.1 & 2) – both after this provision had been removed for policies after April 1, 2002.

In any event, even if there were a policy containing this provision during the time "the suits were filed," this "prior acts extension" – notably called an "extension" rather than a "limitation" – should not be read to limit coverage.  As Plaintiffs note in their summary judgment papers, this type of provision is known as "nose coverage" and is designed to provide an insured – during an initial policy period when the insured is changing from claims-made to occurrence-type coverage– with coverage for prior acts.  See, e.g., Buckeye Ranch, Inc. v. Northfield Ins. Co., 134 Ohio Misc. 2d 10, 17 (Ct. Common Pleas 2005) ("Due to the conceptual difference in coverage, an insured switching from a claims-made to an occurrence-based policy can experience a gap in protection. . . . [S]uch a gap may arise if a third-party claim is first made after a claims-made policy has expired, but arises from an event that occurred before the new occurrence-based policy took effect.  To bridge this potential gap, so-called . . . 'nose' coverage[] may be purchased. . . . So-called 'nose' coverage . . . treats prior acts as 'occurrences' within the new policy period.").  Such a provision should not be read to gut or forfeit occurrence-based coverage that an insured separately obtains and pays for year after year.

of the TILA violations.  The most that a particular policy for which a declarations page gives a limit can cover is all TILA violations occurring within that policy period; therefore, the limit that is listed in a declarations page for a particular policy means a limit for that suit for that policy period.  Again, this result is a creature of the type of coverage involved; because it is an "occurrence type" of coverage triggered by TILA violations occurring in the policy period, the fact that "a class action is one suit" does not result in only one policy period's "per suit" limit being recoverable where the class period encompasses several policy periods.  To confine Plaintiffs' coverage to only one limit of $500,000 would negate the language of the STEO provision which provides coverage for damages based on suits filed against an insured "because of an alleged violation during the Coverage Part period."  In other words, reading the policies as providing a separate limit for each policy period merely gives effect to the coverage provisions.

       To find that Plaintiffs are confined to only one limit under only one policy would be an absurd result indeed.  As conceded by Universal during oral argument, if the Plaintiffs had procured successive policies with these same provisions from different insurers throughout the class period, they would be able to obtain the policy limits for each policy period because each insurer would be held to be "on the hook" for acts committed during its policy period. To find less coverage for an insured who stays with the same insurer for successive policy periods would be inequitable.  Cf. Cast Steel Prods., Inc. v. Admiral Ins. Co., 348 F.3d 1298, 1304 (11th Cir. 2003) ("[W]e find it both illogical and inequitable to deny coverage to the insured who chooses to renew its claims-made policy for successive years with the same insurer . . . . [I]f choosing to cancel or non-renew provided the insured with an extended

reporting period, electing to continue to do business with the same insurer by renewing the claims-made policy certainly 'should not precipitate a trap wherein claims spanning the renewal are denied.'") (quoting Helberg v. Nat'l Union Fire Ins. Co., 657 N.E.2d 832, 834 (Ohio Ct. App. 1995)).

In sum, the Court concludes that Universal's summary judgment must be denied. The "Non-Stacking of Limits" provision, even in conjunction with the definition of "suit," does not confine Plaintiffs to the limits of only one insurance policy within the class period. Under the plain language of the "Non-Stacking of Limits" provision, the condition to the application of the provision – that "more than one policy insures a suit" – is not met here, as there is not more than one policy that insures either of the class action suits.[10]  Instead, as stated herein,

———————————————

[10]As noted earlier, the parties have not cited a case squarely on point and the Court has not located one. The cases cited by Universal are distinguishable and, in any event, are not controlling. In Fredericks v. Universal Underwriters Insurance Co., 915 P.2d 472 (Or. Ct. App. 1996), the policy listed limits on "defense costs for any one suit." The court applied the policy language, in conjunction with the fact that only two suits had been filed during the policy period – which was the applicable trigger there – to conclude that only two limits, rather than the nine sought by the insured, were owed by the insurer. Moreover, Universal cites Fredericks to refute Plaintiffs' "claim-based" argument, asserting that "[t]he Class Actions are 'one suit' regardless of the number of plaintiffs or the number of claims and in this instance 'more than one policy' potentially covered that suit." (Doc. 45 at 11). However, this Court's conclusion regarding the effect vel non of the "Non-Stacking of Limits" provision does not hinge on Plaintiffs' "claim-based" theory.

Universal also relies on Greenidge v. Allstate Ins. Co., 312 F. Supp. 2d 430 (S.D.N.Y. 2004), and Hiraldo v. Allstate Ins. Co., 778 N.Y.S.2d 50 (App. Div. 2004), but these, too, are easily distinguished. Both involved insureds with successive liability policies who were sued for lead exposure occurring over successive policy periods. The courts held that the insured could recover only one policy limit, but these determinations were based on the policies' particular language. The "Non-Stacking of Limits" provision at issue in the instant case is not worded in the same way as the Greenidge and Hiraldo provisions.

Additionally, Universal cites Reliance Insurance Co. v. Treasure Coast Travel Agency, Inc., 660 So. 2d 1136 (Fla. 4th DCA 1995). In that case, the insured sought coverage under four consecutive liability policies for its employee's embezzlement occurring over the four-

each successive policy insures a separate and distinct portion of the underlying class

_____

year period.  Under the policies, the embezzlement was only "one occurrence," and the policies also stated:  "If any loss is covered . . . [p]artly by this insurance . . . and . . . [p]artly by any prior cancelled or terminated insurance . . . the most [the insurer] will pay is the larger of the amount recoverable under this insurance or the prior insurance." 660 So. 2d at 1137. The Unicover policy's "Non-Stacking of Limits" provision is not equivalent to the provisions of the policy in <u>Reliance</u>.  The Non-Stacking of Limits provision at issue here does not include the "partly" language as in <u>Reliance</u>.  Again, each case turns on the particularities of the policy involved.

The final case that is substantively relied on by Universal – <u>Hartford Insurance Co. of the Midwest v. BellSouth Telecommunications, Inc.</u>, 824 So. 2d 234 (Fla. 4th DCA 2002) – involved concurrent insurance policies, one an automobile policy with a $1 million "per accident" limit and one a general liability policy with a $1 million "per occurrence" limit.  After an accident involving a truck, the insured sought to recover under both policies despite a provision stating that "[i]f this Coverage Form and any other Coverage Form or policy issued to you by us . . . apply to the same 'accident,' the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy issued by us." 824 So. 2d at 236.  The court found that this "antistacking clause . . . is unambiguous, limiting coverage . . . for the same accident to $1 million." <u>Id.</u> at 238.  The circumstances of the instant case are different, however; there is not more than one policy covering the same TILA violations; instead, multiple policies are required to cover all of the TILA violations.  And, although during oral argument counsel for Universal repeatedly paraphrased the Non-Stacking of Limits provision as stating that "if more than one policy *applies* to a suit," the provision does not say "applies" as in <u>Hartford</u> or "partly" as in <u>Treasure Coast</u>.

Other courts have found that multiple policy limits are recoverable – again, depending on the policy language and circumstances. <u>See, e.g.</u>, <u>Md. Cas. Co. v. Hanson</u>, 902 A.2d 152 (Md. Ct. Spec. App. 2006) (finding, in lead paint exposure case, that insurer was liable for coverage under six separate liability policies – issued to two different insureds, three consecutive policies each); <u>Nat'l Union Fire Ins. Co. v. Lynette C.</u>, 27 Cal. App. 4th 1434 (1994) (Ct. App. 1994) (finding that three insurance policies were available to satisfy a judgment where consecutive policies were in effect during abuse that occurred over three-year period).  Generally, where courts have precluded an insured from recovering limits under multiple policies, the conclusion has been based in part on a concern that the insured would be getting more than it bargained for. <u>See, e.g.</u>, <u>Employers Ins. of Wausau v. Granite State Ins. Co.</u>, 330 F.3d 1214, 1220 (9th Cir. 2003) (discussing <u>FMC Corp. v. Plaisted & Cos.</u>, 61 Cal. App. 4th 1132, 1189 (1998)).  Such is not the situation here; Plaintiffs are getting no more coverage than their policies provide for, and Universal is not being required to pay anything more than what it agreed to pay.

actions.[11]   Universal's summary judgment motion is therefore denied.

4.  Plaintiffs' Motion (Doc. 29)

In their summary judgment motion, Plaintiffs claim entitlement "to an annual aggregate of $500,000 per year for each of the years contained in the class periods." (Doc. 29 at 17). Plaintiffs aver that the Non-Stacking of Limits provision has no application in this case, and they assert that they each "bargained for a total of $500,000 in coverage for STEO claims that arise each year 'because of an alleged violation during the Coverage Part period.'" (Doc. 29 at 12). As already discussed with regard to Universal's summary judgment motion, the Court agrees that the Non-Stacking of Limits provision does not limit Plaintiffs to the limit of one policy.  However, the Court does not agree that Plaintiffs are entitled to "annual aggregate limits" of $500,000 for each of the policies in effect during the class period. Instead, they are potentially entitled to the "per suit" limits of each policy in effect during the class period.  Additionally, the Court cannot – and does not – make any factual findings as to how much of their limits Plaintiff may have already used in any particular year or any other factual issue.

---

[11]Universal could possibly have achieved a one-policy limit by writing its policies differently.  For example, if these policies were "claims-made" type policies that covered suits filed against an insured during a policy period instead of TILA violations occurring during a policy period, in all likelihood litigation would not be necessary to determine this coverage issue.  Or, perhaps if the exclusionary provisions were written differently, a different result may have been achieved.  However, as Universal itself vigorously argues  (see, e.g., Doc. 33 at 1), this case is not about "hypothetical facts" but about "actual facts," and the policies as written provide coverage for TILA violations in each policy period.  As such, there is no single policy that covers "the suit," and there is not "more than one coverage part or policy" that insures "the suit."  For this reason, the "Non-Stacking of Limits" provision does not come into play here.

Plaintiffs argue in part that "if separate lawsuits were filed at the end of each policy period for claims arising during the prior 12 months, then the [Plaintiffs] would be entitled to an aggregate limit of liability of $500,000 per policy period." (Doc. 29 at 9).  However, this argument ignores the change in "per suit" limits that occurred beginning on April 1, 2002.  At that time, Universal changed the limits of the Unicover policies from $500,000 per suit and $500,000 annual aggregate to $25,000 per suit and $500,000 annual aggregate.  (See Pls.' App. at Bates Stamp UUIC-00204, -00218, -00415, -00437, -00444, -00467, -00475, -00498).  Thus, under Plaintiffs' hypothetical, if separate lawsuits were filed at the end of the 2002-2003 and 2003-2004 policy periods for TILA violations occurring during each of those policy periods, the coverage limit for each such lawsuit would not be $500,000 but $25,000.  The result should be no different where the class period covers more than these two years; in other words, while Plaintiffs are entitled to coverage for each policy period for which they procured coverage – that is, for TILA violations occurring during each policy period, Universal's lower "per suit" limits should be given effect for policy periods beginning on or after April 1, 2002.  Universal defined a class action as one "suit" and has set forth "per suit" limits in each of its policies.  Those limits should be implemented in accordance with the plain terms of the policies and the declarations pages thereto.  There is no basis to give Plaintiffs the "annual aggregate limit" where the "per suit" limit should apply.[12]  Cf. Houston

_____

[12]In connection with the "Non-Stacking of Limits" provision, Plaintiffs argued that they were entitled to a broad reading of the language "claim or suit," contending that because "there are many claims contained in one suit, the clause ['claim or suit' in the Non-Stacking of Limits Provision] must be given its broadest possible interpretation." (Doc. 29 at 9).  To the extent that Plaintiffs also argue because each class action suit consists of multiple individual "claims" that have been combined together they should not be confined to the "per

v. Avondale Shipyards, 506 So. 2d 149, 150 (La. Ct. App. 1987) (concluding that insurer was obligated on each policy it issued during time employee was exposed to silica dust but constraining employee to "per person" limit rather than "per occurrence" limit of each of those policies).

Thus, the Court construes the Universal policies as providing the following amounts of potential coverage with respect to the underlying class actions, modifying Plaintiffs' chart:

Ernie Haire:



In other words, there is potentially $500,000 of coverage available for each of the first four

_____

suit" limit, this argument is rejected.  Although the policy does not define "claim," it does define "suit" and provides limits "per suit," not "per claim."  If there were no "suit" involved here, there might be occasion to examine what limits apply, but here there clearly is a "suit," and thus there is no basis to jump to the annual aggregate limits instead of the "per suit" limits.

Unicover policies procured by Ernie Haire and an additional $25,000 for the fifth policy.[13]
And, for Crown, there is potentially $500,000 of coverage available for each of the first three
policy periods and $25,000 for each of the last two policy periods.

Again, the Court does not make any factual findings regarding the particulars of the
class action lawsuits or whether Plaintiffs have any coverage remaining – for example,
whether they have used up their limits with other matters– for any particular policy period.
The holding here is narrow – at most, Plaintiffs are entitled to coverage of $500,000 per
policy period or $25,000 per policy period, depending on the "per suit" limit in effect for that
policy period.

## III.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  Plaintiff's Motion for Summary Judgment as to the Amount of Coverage Available
Under Part 500 of the Universal Policy (Doc. 29) is **GRANTED in part** and **DENIED in part**.
To the extent the motion seeks a declaration that each Plaintiff is not limited to a single
$500,000 limit under only one of the policies in effect during its class Period, the motion is
**GRANTED**.  To the extent the motion seeks a declaration that each Plaintiff is entitled to an
annual aggregate limit of $500,000 per year for each of the years of the class period, the

_____

[13]The Court has not been presented with a Universal policy providing coverage for
Ernie Haire after April 1, 2003.  (See also Universal's Mem. in Supp. or Cross-Mot., Doc. 45
at 3 ("It is undisputed that [Universal] issued no other policies to either Ford or Crown other
than the Unicover Policies identified herein.")).  Thus, there appears to be part of the Ernie
Haire class period – from April 1, 2003 to August 1, 2003 – for which there is no coverage
afforded by Universal.

motion is **DENIED**.

    2.    Defendant Universal Underwriters Insurance Company's Cross-Motion for

Summary Judgment as to Count I (Doc. 45) is **DENIED**.

    3.    This Order does not close the case.  Count III of Crown's Second Amended

Complaint (Doc. 39) remains pending.

    **DONE** and **ORDERED** in Orlando, Florida this 27th day of March, 2008.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party